# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRANCH BANKING & TRUST CO., | § | |
| SUCCESSOR IN INTEREST TO COLONIAL | § | |
| BANK, BY ACQUISITION OF ASSETS | § | |
| FROM THE FDIC AS RECEIVER | § | Case No. 4:10-CV-461 |
| FOR COLONIAL BANK | § | Judge Mazzant |
| | § | |
| v. | § | |
| | § | |
| ETZIK GEDALIA | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment on Plaintiff's Claims (Dkt. #23). Also pending before the Court is Defendant's Motion to Strike Plaintiff's Purported Summary Judgment Evidence (Dkt. #28). Having considered the relevant pleadings, the Court grants Plaintiff's Motion for Summary Judgment (Dkt. #23), and denies Defendant's Motion to Strike Plaintiff's Purported Summary Judgment Evidence (Dkt. #28).

## BACKGROUND[1]

Plaintiff's Motion for Summary Judgment asserts Defendant failed to satisfy his obligations under two separate guaranty obligations signed by Defendant. On or about August 17, 2007, Biloxi Gaming Partners I, LLC ("Biloxi") executed a promissory note (the "Biloxi Note") in favor of Colonial Bank, in the original principal amount of $4,830,000.00. With the execution of the Note, Plaintiff and Biloxi executed a Deed of Trust, which is recorded in the real property records of Harrison County, Mississippi. The Note was fully guaranteed by a Guaranty and Certification of

---

[1] The facts in this section are taken from Plaintiff's Motion for Summary Judgment (Dkt. #23), and are undisputed by Defendant.

1

Guarantor signed by Defendant. Plaintiff asserts that it is the current owner and holder of the Biloxi Note and Guaranty. Defendant asserts Plaintiff has not adequately proven standing.

The original maturity date of the Biloxi Note was May 17, 2008. Plaintiff and Biloxi entered into three subsequent Loan Modification Agreements that ultimately extended the maturity date to November 13, 2009. Biloxi defaulted under the Biloxi Note and Third Modification Agreement. Plaintiff's counsel sent a written Notice of Default and Opportunity to Cure on or about April 6, 2010, demanding payment on or before 10:00 a.m. on April 21, 2010. Biloxi failed to cure the default under the Biloxi Note, and Defendant failed to satisfy the guaranty of payment of the Biloxi Note.

On or about February 20, 2007, 3821 Westlake entered into a loan agreement with Colonial Bank and signed a promissory note (the "Westlake Note") in favor of Colonial Bank in the original principal amount of $1,590,000.00. Concurrently with the execution of the Westlake Note, Plaintiff and 3821 Westlake entered the Westlake Deed of Trust, which is recorded in the real property records of Travis County, Texas. The Note was fully guaranteed by virtue of a Guaranty (the "Westlake Guaranty") signed by Defendant.

The Westlake Note was assumed by 3823 Westlake on or about January 25, 2008, pursuant to a Consent, Loan Modification, and Assumption Agreement; however, 3821 Westlake was not released from its obligations under the Note. Plaintiff asserts it is the current owner and holder of the Westlake Note and the Westlake Guaranty. Defendant asserts Plaintiff has not adequately proven standing.

The original maturity date of the Westlake Note was February 20, 2008. Pursuant to the Consent, Loan Modification, and Assumption Agreement, the maturity date was extended to

February 20, 2009. Plaintiff and 3821 Westlake entered into two subsequent Loan Modification Agreements, which ultimately extended the maturity date to August 20, 2009. The Westlake borrowers defaulted on the Westlake Note by failing to pay all sums due on or before August 20, 2009. Plaintiff's counsel sent a written Notice of Default and Opportunity to Cure on or about August 31, 2010, demanding payment on or before 10:00 a.m. on September 13, 2010. The Westlake borrowers failed to cure the default under the Westlake Note, and Defendant failed to satisfy the guaranty of payment of the Westlake Note.

On September 13, 2010, Plaintiff filed its Complaint against Defendant for the failure to satisfy the guaranty of payment (Dkt. #1). On September 26, 2011, Plaintiff filed its Motion for Summary Judgment on Plaintiff's Claims (Dkt. #23). Defendant filed his Response on October 28, 2011 (Dkt. #27). On the same date, Defendant also filed a Motion to Strike Plaintiff's Purported Summary Judgment Evidence (Dkt. #28), and Objections to Plaintiff's Purported Summary Judgment Evidence (Dkt. #30). On November 7, 2011, Plaintiff requested leave to file supplemental evidence in support of its Motion for Summary Judgment (Dkt. #35), and the Court granted leave November 30, 2011 (Dkt. #40). On November 8, 2011, Plaintiff filed a Reply (Dkt. #36). Defendant filed a Sur-Reply on November 21, 2011 (Dkt. #38).

## STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Plaintiff argues it is entitled to Summary Judgment because it can prove each element of its claim for breach of a guaranty, as a matter of law. Defendant does not refute the facts as stated by Plaintiff, but challenges Plaintiff's standing to bring its claims, the sufficiency of Plaintiff's evidence

4

regarding damages, and the sufficiency of Plaintiff's evidence regarding attorney's fees.

*Standing*

Defendant asserts that Plaintiff does not have standing to asserts its claim because the evidence demonstrating Plaintiff's ownership of the guaranty is insufficient. Specifically, Defendant asserts that the affidavit of David Hendricks ("Hendricks") lacks personal knowledge, contains conclusory statements and legal argument, and refers to unauthenticated or unattached documents.

In paragraphs 7, 16, and 22, Hendricks states that Plaintiff is the owner of the Notes and Guaranties. MOTION FOR SUMMARY JUDGMENT "MSJ", EXHIBIT A. Hendricks is an employee of Plaintiff and is responsible for researching the loan histories of the parties who are in litigation with Plaintiff. MSJ, EXHIBIT A, ¶ 2. A bank employee may gain personal knowledge by reviewing the records of an organization. *Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993). "A district court may rely upon affidavits in the summary judgment context where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *Madison One Holdings, LLC v. Punch Int'l, NV*, No. 4:06-CV-3560, 2009 WL 911984, at *11 (S.D. Tex. March 31, 2009) (citation omitted). "An affiant... may have personal knowledge of activities in which [he] has not actually participated." *Hamilton v. Trover Solutions, Inc.*, No. 03-30547, 2004 WL 1491587, at *1 (5th Cir. 2004) (citation omitted). For example, "a manager of an organization can glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records." *Id*. Hendricks has personal knowledge based on his review of the loan history in this case to support his affidavit.

Further, Hendricks' assertions of ownership are not conclusory. Plaintiff, Branch Banking

& Trust Co., is the owner and holder of the Note by acquisition of Colonial Bank. In support of this assertion, Plaintiff provided the Court with the "Purchase and Assumption Agreement Whole Bank All Deposits Among Federal Deposit Insurance Corporation, Receiver of Colonial Bank and Branch Banking and Trust Company," in which Plaintiff acquired the assets of Colonial Bank. SUPPLEMENT, EXHIBIT C-2. According to Plaintiff, this document is also a matter of public record and available on the website of the Federal Deposit Insurance Corporation.

The records are properly authenticated by business record affidavit of Hendricks and Tracye M. McGaughy. Defendant failed to identify any unattached records necessary to further prove Plaintiff's assertions of ownership. Therefore, the Court finds this evidence is sufficient to support Plaintiff's standing to bring its claim for breach of guaranty, and Defendant's objections to paragraphs 7, 16, and 22 of Hendricks' affidavit are overruled.

*Claim for Breach of Guaranty*

To prevail on its claim for breach of guaranty, Plaintiff must prove the following: (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) failure or refusal to perform the promise by the guarantor. *Lee v. Martin Marietta Materials Southwest*, 141 S.W.3d 719, 720-21 (Tex. App. - San Antonio 2004, no pet.).

Plaintiff is the holder of the Biloxi Note and the Biloxi Guaranty. The terms of the Biloxi Guaranty state that Defendant will "absolutely and unconditionally" guarantee the payment of the indebtedness under the Biloxi Note to Plaintiff. MSJ, EXHIBIT A-3. Defendant also agreed to "be liable as a primary obligor for the payment and performance of the Guaranteed Indebtedness," and that the Guaranty shall be absolute and continuing. MSJ, EXHIBIT A-3, ¶ 2. The "Guaranteed

Indebtedness" includes:

> [T]he indebtedness, obligations and liabilities evidenced by or arising under that certain Promissory Note (as such has been or may hereafter be amended, supplemented, modified, renewed, extended and/or restated from time to time, herein called the "Note"), of even date herewith, executed by Borrower, payable to the order of Holder, in the stated principal amount of Four Million Eight Hundred Thirty Thousand and No/100 Dollars ($4,830,000.00); and any and all renewals or extensions of all or any part of the indebtedness, obligations, and liabilities described or referred to in Subsection (a) preceding, together with all costs, expenses, and reasonable attorney's fees incurred in the enforcement or collection thereof.

MSJ, EXHIBIT A-3, Introductory Paragraph. Biloxi has failed and refused to pay the amounts due under the Biloxi Note. Defendant has similarly refused to pay the amounts owed pursuant to the Biloxi Guaranty.

Plaintiff is also the holder and owner of the Westlake Note. Pursuant to the Westlake Guaranty, the Defendant agreed to "irrevocably and unconditionally" guarantee the payment of the indebtedness under the Westlake Note to Plaintiff. MSJ, EXHIBIT A-10, ¶ 1.1. The "Guaranteed Debt" covered by the Westlake Guaranty includes:

> A. All principal, interest, attorneys' fees, commitment fees, liabilities for costs and expenses and other indebtedness, obligations and liabilities of Borrower to Lender at any time created or origins in connection with the Loan, or any amendment thereto or substitution therefor, including but not limited to all indebtedness, obligations and liabilities of Borrower to Lender arising under the Note, or under any renewals, modifications, increases and extensions of the Note, or under the Loan Documents;
> B. All liabilities of Borrower for future advances, extensions of credit, sales on account or other value at any time given or made by Lender to Borrower arising under the Loan Documents, whether or not the advances, credit or value are given pursuant to commitment;
> C. Any and all other indebtedness, liabilities, obligations and duties of every kind and character of Borrower to Lender, whether now or hereafter existing or arising, regardless of whether such present or future indebtedness, liabilities, or obligations or duties are direct or indirect, related or unrelated, liquidated or unliquidated, primary or secondary, joint, several, or joint and several, or fixed or contingent;
> D. Any and all post-petition interest and expenses (including attorneys' fees) whether or not allowed under any bankruptcy, insolvency, or other similar law; and

> E. All costs, expenses, and fees, including but not limited to court costs and attorneys' fees, arising in connection with the collection of any or all amounts, indebtedness, obligations and liabilities of Borrower to Lender described in items (A) through (D) of this Section.

MSJ, EXHIBIT A-10, ¶ 1.2. The Westlake Borrowers have failed and refused to pay the amounts due under the Westlake Note. Defendant has similarly refused to pay the amounts owed pursuant to the Westlake Guaranty.

Defendant does not refute these facts, nor does he challenge the sufficiency of Plaintiff's evidence regarding the guaranty obligations. Therefore, the Court finds that Plaintiff has demonstrated "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

*Damages*

Defendant asserts that the affidavit of Hendricks is not competent summary judgment evidence because it is (1) based on the affiant's belief, rather than personal knowledge; (2) does not set forth facts with the specificity required by FED. R. CIV. P. 56(e); (3) contains mere conclusory allegations and impermissible legal argument; and (4) makes reference to various unattached, unauthenticated, and unsworn documents. MOTION TO STRIKE at 1.

The Court finds that the affidavit of Hendricks is based on personal knowledge. FED. R. CIV. P. 56(e) requires that opposing affidavits "be made on personal knowledge" and that they "show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). As stated above, a bank employee may gain personal knowledge by reviewing the records of an organization. *Dalton,* 987 F.2d at 1223. "A district court may rely upon affidavits in the summary judgment context where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their

positions and the nature of their participation in the matters to which they swore.'" *Madison One*, 2009 WL 911984, at *11.

Hendricks affirms in his affidavit that, "All statements of fact made herein are true, correct, and within my personal knowledge." MSJ, EXHIBIT A, ¶ 1. Further, Hendricks holds the position of Senior Vice President of the Acquired Asset Group/Problem Loan Administration at Branch Banking & Trust Co. *Id.*, ¶ 2. His job duties include: "researching the loan histories of parties who are in litigation with Bank; determining whether or not these parties made timely principal, interest, and other payments on loans to Bank; and serving as Bank's corporate representative in trials, court hearings, depositions, and mediations as necessary." *Id.* In his affidavit, Hendricks states that he has reviewed the loan documents in this matter and is familiar with Defendant's obligations relative to the loan guaranties. *Id.*, ¶ 3. Therefore, the Court finds that Hendricks has sufficient personal knowledge to make the statements contained in his affidavit regarding damages, and is competent to make those statements.

Defendant contends that paragraphs 15 and 30 contain conclusory allegations and impermissible legal argument. However, Defendant fails to specify which portions of these paragraphs contain conclusory allegations, and which are impermissible legal argument. Paragraphs 15 and 30 contain testimony by Hendricks regarding the specific amount of damages owed by Defendant on each note.

On November 13, 2008, the date of the Third Loan Modification, the principal amount owed on the Biloxi loan was $4,830,000.00. MSJ, EXHIBIT A-6, ¶ 3. The interest rate was the greater of (1) the Prime Rate (as described therein), (2) 4.75%, or (3) the Maximum Lawful Rate. *Id.*, ¶ 7. The Biloxi Deed of Trust states that the borrower is responsible for the payment of taxes. MSJ, EXHIBIT

A-2, ¶ 3.13. The Biloxi Deed of Trust also states that the borrower shall promptly pay the lender upon demand all reasonable costs and expenses incurred by the beneficiary in connection with a) the preparation of the loan documents and any amendment, modification, or supplement thereto, and b) the enforcement or satisfaction by lender of any of borrower's obligations under the deed of trust or loan documents, including costs for appraisals, inspections, legal fees, environmental consultant fees, among other costs. *Id.*, ¶ 3.22.

Hendricks determined that as of August 16, 2011, the principal balance of the Biloxi loan was $4,830,000.00, the accrued interest was $464,585.67, the taxes paid by Plaintiff were $2,327.54, plus expenses of $9,250.00 for the appraisal and $1,950.00 for the Phase I Environmental Study. MSJ, Exhibit A, ¶ 15. Hendricks stated that this amount should be credited $1,116,000.00, which is the credit bid by the Plaintiff at the foreclosure of the real property encumbered by the Biloxi Deed of Trust. *Id*. Hendricks testified that the total amount owed by Defendant on the Biloxi loan came to a total of $4,192,113.10. *Id*. Additionally, the per diem interest rate on the remaining principal balance is 4.75% per annum, or $533.13, based on the parties' agreement set forth in the Biloxi Third Loan Modification. *Id*.

This evidence is supported in part by the loan documents and the loan modification agreements themselves. Hendricks' testimony is further supported by Exhibit A-14, showing an August 10, 2011 loan snapshot for the Biloxi loan, and Exhibit A-16, showing the appraisal and environmental invoices for the Biloxi property. SUPPLEMENT, EXHIBITS A-14 AND A-16. This evidence is sufficient to support the calculation of damages made by Hendricks, which are not conclusory. Defendant's objections to paragraph 15 are overruled.

On May 20, 2009, the date of the Westlake Third Loan Modification Agreement, the principal balance of the Westlake loan was $542,500.00. MSJ, Exhibit A-13, ¶ 2. The interest rate was the lesser of a) the maximum rate permitted by applicable law, or b) the greater of i) the sum of Zero Percent (0.00%), plus Prime Rate per annum, simple interest or ii) Four and One-Half Percent (4.5%) per annum, simple interest. MSJ, Exhibit A-12, ¶ 5. The Westlake Deed of Trust states that the borrower shall pay all taxes, as well as other expenses and fees of lender incurred relative to enforcing the debt.

Hendricks determined that as of July 5, 2011, the principal balance on the Westlake loan was $542,500.00, the accrued interest was $44,281.58, the taxes paid by Plaintiff were $12, 583.39, plus expenses of $500.00 for an appraisal. MSJ, Exhibit A, ¶ 30. Hendricks stated that this amount should be credited $450,000.00, which is the credit bid of the foreclosure of the real property encumbered by the Westlake Deed of Trust. *Id*. The total amount owed on the Westlake loan is $149,864.97. *Id.* Additionally, the per diem interest rate on the remaining principal balance is 4.50% per annum, or $18.73, based on the parties' agreement set forth in the Westlake Second Loan Modification Agreement. *Id*.

This evidence is supported in part by the loan documents and the loan modification agreements themselves. Hendricks' testimony is further supported by Exhibit A-15, showing a July 5, 2011 loan snapshot for the Westlake loan, and Exhibit A-17, showing the appraisal and environmental invoices for the Westlake property. Supplement, Exhibits A-15 and A-17. This evidence is sufficient to support the calculation of damages made by Hendricks, which is not conclusory. Defendant's objections to paragraph 30 are overruled.

Finally, Defendant argues that Hendricks references unauthenticated or unattached

documents. First, Hendricks' affidavit clarifies that he is a custodian of records for Plaintiff, and authenticates the attached documents by a proper business records affidavit. Second, Defendant identifies no documents that are unattached to the affidavit that are needed to reinforce the statements made within the affidavit. Therefore, this objection is also overruled.

*Attorneys' Fees*

Defendant objects to the Declaration of Jeff Mitchell ("Mitchell"), asserting that it contains legal, conclusory statements based on opinion and belief regarding reasonable attorneys' fees that are unsupported by attached documentary evidence.

Mitchell's affidavit states, "I am an attorney at Higier Allen & Lautin, P.C., attorneys for Plaintiff... I am an attorney licensed to practice in the State of Texas." MSJ, EXHIBIT B, ¶ 2. Mitchell affirms that the firm was engaged by Plaintiff to file a suit seeking relief from Defendant. *Id.*, ¶ 5. Mitchell describes the activities performed by the firm in detail, stating the following:

> Pursuant to the engagement of the Firm by Plaintiff, attorneys in the Firm had multiple communications with representatives of Plaintiff, reviewed the relevant loan documentation on both the Westlake and Biloxi loans, made initial demand upon Defendant for both loans, had conversations with counsel for Defendant, prepared notices of foreclosure and related documents for the properties covered by the Westlake and Biloxi loans, ordered and reviewed title reports and other documents relative to the foreclosures, responded to bankruptcy filings of Westlake and Biloxi borrowers and filed motion to lift stay, engaged Mississippi counsel to conduct the foreclosure sale of the Biloxi property, conducted the foreclosure sale of the Westlake property.

*Id.*, ¶ 6. Mitchell states, "In my opinion, all of the services described herein were necessary, and it was reasonable for the Firm to perform these services on behalf of Plaintiff." *Id.*, ¶ 7.

Mitchell's affidavit is clearly supported by the evidence of record. Plaintiff further supplemented the summary judgment evidence and provided the firm's fee statements for attorneys'

12

fees and expenses incurred in this matter. SUPPLEMENT, EXHIBIT B-4.

In adjudicating an attorneys' fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co.*, 50 F.3d at 324. In the second step of the lodestar method, the Court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2] *Riley*, 99 F.3d at 760; *Louisiana Power & Light*, 50 F.3d at 331. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). The most critical factor in determining the reasonableness of an attorney's fee award is the degree of success obtained. *Id.*; *Hensley*, 461 U.S. at 436. The "lodestar" figure is presumptively reasonable and should be modified only in exceptional cases. *Nassar v. University of Tex. Southwestern Medical Center*, No. 3:08-CV-1337, 2010 WL 3000877, at *2 (N.D. Tex. July 27, 2010) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

The first step in the calculation of the lodestar is to determine the number of hours reasonably

---

[2] The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson*, 488 F.2d at 717-19).

expended by counsel, as well as a reasonable rate. Mitchell reports that attorneys in the firm have spent an aggregate in excess of 126.93 hours on the Biloxi loan, and 101.33 hours on the Westlake loan. MSJ, EXHIBIT B, ¶ 8. Paralegals have spent .7 hours on the Biloxi loan, and 1.2 hours on the Westlake loan. *Id*. Mitchell also testifies that a reasonable rate for the services provided in the Dallas/Fort Worth metroplex area for lawyers with similar experience of the lawyers in this case to be between $150 and $290 per hour. *Id*. Mitchell also states a reasonable rate for paralegal services is between $75 and $85 per hour. *Id*. Mitchell concludes by stating that the total reasonable and necessary attorneys' fees are $28,495.41 for the Biloxi loan, and $24,475.32 for the Westlake loan. *Id*.

The Court finds that the rates and hours requested are reasonable. Plaintiff is the prevailing party in this case. Although the Defendant argues for application of the lodestar method, he does not argue that the hours or rates claimed by Plaintiff should be adjusted upward or downward for any reason. The Court finds no reason to alter the lodestar fee after consideration of the factors. In addition, the Court finds that Plaintiff should be able to recover expenses for services rendered, including delivery expenses, mileage, travel and parking expenses, telecopy expenses, research fees, title report fees, foreclosure expenses, photocopying expenses and postage, in the amount of $6,914.03 for the Biloxi loan and $1,780.71 for the Westlake loan. *Id*., ¶ 9.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #23) is **GRANTED**.

It is hereby **ORDERED** that Defendant's Motion to Strike Plaintiff's Purported Summary Judgment Evidence (Dkt. #28) is **DENIED.**

It is further **ORDERED** that Defendant shall pay to Plaintiff a sum of $4,192,113.10, plus the per diem interest rate on the remaining principal balance of 4.75% per annum pursuant to the Biloxi loan. Defendant should also pay attorneys' fees and expenses relative to pre-litigation collection and foreclosure on the Biloxi property in the amount of $35,409.44.

It is further **ORDERED** that Defendant shall pay to Plaintiff a sum of $149,864.97, plus the per diem interest rate on the remaining principal balance of 4.50% per annum pursuant to the Westlake loan. Defendant should also pay attorneys' fees and expenses relative to pre-litigation collection and foreclosure on the Westlake property in the amount of $26,256.03.

**It is SO ORDERED.**

**SIGNED this 20th day of January, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE